STATE *vs.* GEORGE W. WHITE *et als.*

A town "voted that a sum of money not exceeding $10,000 be and the same hereby is appropriated to build one half of M. Bridge, westerly, to the iron watering trough near the K. Brook, and to set curbing and pave the gutters on said road," and afterward the town council appointed a committee "to cause the old K. road at M. to be graded, gutters paved and curbed, and the bridge over the W. River at M. to be rebuilt."

*Held,* that the appointment of this committee was not an infringement of the duties and rights of the commissioner of highways of the town.

INFORMATION in the nature of *quo warranto* filed by the Attorney General on the relation of John Walsh. On demurrer to the information.

*July* 27, 1889. TILLINGHAST, J. This is an information in the nature of a writ of *quo warranto*, filed by the Attorney General, on the relation of John Walsh, commissioner of highways of the town of Johnston, to inquire by what authority the defendants are assuming to exercise certain powers and duties in connection with the building of a bridge in one of the public highways of said town, and the doing of certain other work on said highway. The information sets forth, in substance, that the relator has been duly elected to the office of commissioner of highways of said town; that he has duly qualified himself to act and is acting as such officer, and performing the duties pertaining to the office; that, by virtue of his said office, it is his duty to keep in repair and amend from time to time all the highways and bridges in said town, as provided by statute; and that at the general election held in said town, on the first Wednesday in April last, an appropriation of $6,000 was made to repair the highways thereof, a large part of which sum has already been expended by him for said purpose.

He further sets forth that, at a town meeting held in said town on the last Monday in May, 1889, other large sums of money were appropriated for the highway department, among which was the

following : " Voted, That a sum of money not exceeding $10,000 be and the same hereby is appropriated, to build one half of Manton Bridge, westerly, to the iron watering trough near the Killey Brook, and to set curbing and pave the gutters on said road." That on the 18th day of June the town council of said town, on petition therefor, appointed the defendants a committee, with full power to cause the old Killingly road at Manton to be graded, gutters paved and curbed, and the bridge over the Woonasquatucket river at Manton to be rebuilt.

That said defendants pretendedly qualified as such committee, and are acting in that behalf, and that they are thus illegally and without right usurping the duties and functions which belong to the relator by virtue of his said office ; and that the defendants have, in so far as the doing of said work is concerned, obtruded themselves into his office and ousted him therefrom ; and praying for a decree forbidding them from thus interfering with the duties of the highway commissioner, and that they be ousted from said office. To this information the defendants have demurred.

The main question raised by the demurrer, and the only one we deem it necessary to consider, is, whether or not the acts charged against the defendants amount to an usurpation by them of the office and functions of the relator as commissioner of highways.

The counsel for the relator contends that *all* work on the highways, including the building of bridges, appertains of right to the office of commissioner of highways, and that the town council has no authority to devolve said work, or any part thereof, on any other person or persons, and that the responsibility of doing the work contemplated by the vote of the town rested solely on said commissioner the moment said vote was passed in town meeting. He further contends that the building of a new bridge is nothing more than the repairing and amending of a highway within the meaning of Pub. Stat. R. I. cap. 65, § 1. The counsel for the defendants contend, on the other hand, that the authority of the commissioner of highways extends only to the repairing and amending of highways, and the doing of such additional work in connection therewith as is specially devolved on him by statute, or as the town council may direct him to do, but that he has no authority, simply by virtue of his office, to build highways or bridges,

that not being either a repair or amendment. They further contend that there is no officer known to the law to build bridges, and that it follows that these defendants were legally appointed, and have the right and the duty to build said bridge as directed, and that they cannot be ousted as members of the committee, or interfered with in the proper discharge of their functions.

The vote of the town council by which the defendants were appointed a committee, etc., does not refer in terms to the vote of the town whereby the appropriation to build the bridge, etc., was made. But we assume that the work which said committee was appointed to do is the same, and no more, as that contemplated by the tax payers in the making of said appropriation. For we cannot presume that the town council would use any part of a special appropriation for any other purpose than that designated by the town in making it. And no question is made at the bar that any other work is intended to be devolved on this committee. And we understand by the vote of the town that the main object of the appropriation was to build one half of Manton Bridge, and that the provision in said vote, " to set curbing and pave the gutters on said road," is merely incidental to the building of the bridge, by constructing the necessary approaches thereto. See *Titcomb* v. *Fitchburg Railroad Co.* 12 Allen, 254, 259 ; *Commonwealth* v. *Inhabitants of Deerfield,* 6 Allen, 449. The powers and duties of surveyors of highways (and where commissioners are elected, instead of surveyors, they have the same powers throughout the town as surveyors do in their respective districts, see Pub. Stat. R. I. cap. 37, § 2) are regulated and defined by statute. See Pub. Stat. R. I. cap. 65, §§ 1–12, 15–24, 30–33, 37. Section 1 contains a summary of the duties of said office, and is as follows :

" All highways, causeways, and bridges, except as is hereinafter provided, lying and being within the bounds of any town, shall be kept in repair and amended from time to time so that the same may be safe and convenient for travellers, with their teams, carts, and carriages, at all seasons of the year, at the proper charge and expense of such town, under the care and direction of the surveyor of highways for such town."

The statutory powers and duties of the relator, then, as commissioner of highways, are to keep the highways in repair and amended, together with such incidental and additional powers as are conferred by said cap. 65.

So that the question which arises is this, viz. : Is the work which the defendants have been appointed and directed by the town council to do a repairing or amending of one of the highways of said town, within the meaning of said § 1 ? We think not.

To *repair* means, according to Webster, " to restore to a sound or good state, after decay, injury, dilapidation, or partial destruction ; as, to repair a house, a wall, or a ship." To *amend*, according to the same author, means " to change in any way for the better, as, *a.* By simply removing what is erroneous, corrupt, superfluous, faulty, and the like ; *b.* By supplying deficiencies; *c.* By substituting something else in the place of what is removed." We think that the building of a new bridge in a highway is something more than merely repairing the highway, within the meaning of said § 1. Indeed, the statute seems to view it in this light; for by Pub. Stat. R. I. cap. 34, § 5, it is provided that towns may appropriate money " for the building, repairing, and amending of bridges." To build is to construct and raise anew, and not simply to amend or repair something previously constructed.

Says Rogers, J., in *Cornell* v. *Vanartsdalen*, 4 Pa. St. 364, 370, referring to the term " repairs " : " It is not a technical expression, and must be taken as used in its ordinary sense, and does not extend to improvements of the soil. . . . Repairs do not include new buildings, but they are a restoration to a sound state of what had gone into partial decay or dilapidation, or bettering what had been destroyed in part. . . . The word ' repairs ' is plain, unambiguous, and must be considered as used in the sense in which it is ordinarily understood. To repair is to restore to a sound state, to mend or refit." Says Read, J., in *Ardesco Oil Co.* v. *Richardson*, 63 Pa. St. 162, 166 : " Repair means to restore to its former condition, not to change either the form or the material. If you are to repair a wooden building, you are not to make it brick, stone, or iron, but you are to repair wood with wood." See, also, *Todd* v. *Inhabitants of Rowley*, 8 Allen, 51, 58.

Pub. Stat. R. I. cap. 177, § 1, gives a lien upon buildings, ca-

nals, turnpikes, railroads, etc., for all work done in the " *construction, erection, or reparation* thereof."

" The words 'to amend,' " says Daly, C. J., in *Diamond* v. *Williamsburg Insur. Co.* 4 Daly, 494, 500, " came into our language from the French ' *amender*,' the root or parent word being *menda*, a fault, and means, in its most comprehensive sense, '*to better.*' It is so defined by all the leading lexicographers. Thus, in Phillips's ' New World of Words,' and in Kersey, and in Bailey, one of the definitions is, to ' *make better;* ' in Johnson, *to change from bad for the better.*"

But again. As opposed to the position taken by the counsel for the relator, that *all* work on the highways belongs of right to the commissioner, we find by Pub. Stat. R. I. cap. 37, § 2, that it is provided that such commissioner shall have " the powers of surveyors throughout the town, *and such other powers in relation to highways and bridges as the town, by by-law or ordinance, may choose to confer upon them, as the town may have occasion for ;* " thus clearly showing that there are reserved powers in the towns relating to the management of highways which may be conferred upon the commissioner, or upon such other person or persons as they may see fit.

And still further it appears, by the vote of the town making the appropriation for the work under consideration, that it was not for repairs or ordinary work on the highways, but for a permanent improvement. The regular and ordinary appropriation for repairs was made at the April town meeting, and was subject to the control of the commissioner for ordinary work. *This* appropriation, however, was for extraordinary work and for that only, as appears from the wording of the vote. It could not be legitimately used for general repairs, or for any other purpose than that designated by the tax payers.

Furthermore, this construction of the powers and duties of commissioners of highways is in accordance with the practical construction which we understand has been given thereto by town councils in this state for a very long period. They have always exercised the right to build new bridges, lay out and construct new highways, and make permanent and radical improvements in those already established, upon making special appropriations

therefor by the tax payers, without devolving the work on the surveyor of highways, and without any relation to him. A practice so uniform and of so long standing on the part of town councils, almost always composed of men well versed in the management of town affairs, is entitled to much weight in the decision of questions of this sort.

We are therefore of the opinion that the defendants have not usurped any of the powers or duties of the relator as commissioner of highways, nor ousted him from said office.

After the foregoing opinion had been given, the relator filed a petition for leave to reargue the case.

*November* 13, 1889. TILLINGHAST, J. The relator petitions for a reargument, on the ground that the court have erred in matter of law, in the decision previously rendered in this case ; and particularly in that they have misconstrued Pub. Stat. R. I. cap. 65, § 1, in so far as that section defines the powers and duties of surveyors of highways. And in support of his position, he cites the cases of *Rounds* v. *Mumford*, 2 R. I. 154, and *Gardiner* v. *Town Council of Johnston*, ante, p. 94, and contends that the decision which we have rendered is in conflict therewith.

We have therefore carefully reëxamined those cases, in order to ascertain whether the construction which we have put upon said section is at variance with that which was put upon it by this court in said cases. But we do not find that it is.

*Rounds* v. *Mumford* was a case in which the main questions decided were, *first*, that under the " Act for the Mending of Highways and Bridges " then in force, the surveyor of highways had full power to grade or regrade any public highway ; and *second*, that the owners of land adjoining highways were not entitled to compensation for damages caused by a change of grade in the highways which such lands adjoined, there being no statute then in force providing for the payment of damages thus caused.

*Gardiner* v. *The Town Council of Johnston* was a case in which the only question considered which has any possible bearing upon the case now before us was that relating to the power of a surveyor of highways, under the provisions of Pub. Laws R. I. cap.

634, of March 9, 1866, to establish and work a grade on a public highway. What we have decided is, that it was competent for the town council of Johnston to confer upon the defendants, as their agents and servants, the authority to rebuild one half of Manton Bridge, and do such other incidental work in connection therewith as might be necessary to render the same available for use as a part of the public highway, and that the doing of said work was no usurpation of any of the powers or prerogatives of the commissioner of highways of said town. We see no reason to modify that decision.

We do not think that the powers of town councils in relation to the building and improving of highways are so limited, nor those of surveyors of highways so absolute, as is contended for by the counsel for the relator.                                    *Petition dismissed.*
                    *Demurrer sustained and information dismissed.*
    *Andrew B. Patton*, for relator,
    *Nicholas Van Slyck & Cyrus M. Van Slyck*, for respondents.